UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RUTH ANN BRAZIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CV-07-54-B-W |
| | ) |
| OXFORD COUNTY, LLOYD HERRICK, | ) |
| and JANE DOE, | ) |
| | ) |
| Defendants. | ) |

**ORDER AFFIRMING RECOMMENDED DECISION AND GRANTING PLAINTIFF'S MOTION FOR SUBSTITUTION OF A PARTY**

On May 13, 2008, the magistrate judge filed with the Court her Recommended Decision (Docket # 31). The Defendants filed their objections on June 2, 2008. *Defs. Oxford County, Lloyd Herrick, and Jane Doe's Partial Objection to Magistrate's Recommended Decision on Defs.' Mot. for J. on the Pleadings and Summ. J.* (Docket # 33) (*Defs.' Obj.*). The Court has reviewed and considered the magistrate judge's Recommended Decision, together with the entire record and has made a *de novo* determination of all matters adjudicated by the magistrate judge's Recommended Decision. The Court affirms the magistrate judge's Recommended Decision over the objections of the Defendants. It also grants the Plaintiff's motion to substitute one of the Defendants; however, the Court will enter judgment in favor of that Defendant under Rules 16(f) and 37(b) once defense counsel has confirmed acceptance of service on behalf of that Defendant. Fed. R. Civ. P. 16(f), 37(b).

**I.    DISCUSSION**

    **A.    The County's Municipal Liability**

Defendants "object to the Magistrate's denial of Defendants' Motion for Judgment on the Pleadings and the Magistrate's denial of summary judgment on the claim that Oxford County may be subject to municipal liability with regard to . . . alleged strip searches." *Defs.' Obj.* at 1. At issue is whether Oxford County may be held liable for any unconstitutional strip searches performed upon Ms. Brazier during two post-arrest confinements at the Oxford County Jail, both relating to Ms. Brazier's driving privileges.[1] To maintain a 42 U.S.C. § 1983 claim grounded on an unconstitutional custom or practice, the plaintiff must show that the custom or practice is attributable to the municipality; in other words, it must be "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989). Defendants object to Magistrate Judge Kravchuk's finding that Ms. Brazier has presented evidence "minimally sufficient to support a finding that Brazier was subjected to unconstitutional strip searches arising from an established custom that could not or should not have gone unnoticed and would not have existed without the acquiescence of policymaking officials and, by extension, without an awareness of an obvious need for additional or different training." *Rec. Dec.* at 18.

Ms. Brazier was stripsearched three times at the Oxford County Jail without reasonable suspicion to believe that she was hoarding evidence of a crime, weapons, drugs, or contraband. She was first stripsearched in connection with her overnight incarceration on April 25, 2006, when she was arrested for operating a vehicle without a license and failing to obtain a Maine driver's license. She was stripsearched again during the intake procedure associated with a May

---

[1] Defendants do not dispute the magistrate judge's finding that "[b]ecause Brazier was detained on misdemeanor charges pertaining to her driving privileges and the record lacks evidence of any reasonable suspicion that she was hiding weapons or contraband, any strip searches that did occur violated her constitutional right to be secure against unreasonable searches of her person." Recommended Decision at 12 (*Rec. Dec.*)

2

9, 2006 arrest for failing to obtain a Maine driver's license and for violating conditions of release. She was stripsearched a third time that same day when she returned from a court hearing regarding her arrest. Ms. Brazier claims that the same corrections officer searched her all three times,[2] and that the corrections officer stated "[w]e search all inmates in here for the guard's protection" and "[w]e always do a search when anyone leaves the jail and return[s]."[3] *Pl.'s Answers to Def.'s Interrogs.* ¶¶ 3(f), 6(c).

These strip searches violated the County's written policy, which states:

> INMATES CHARGED WITH MISDEMEANOR CRIMES:
> a. **the inmate *will not* be strip searched** unless there is reasonable suspicion to believe that the inmate is hoarding evidence to a crime, weapons, drugs or contraband.

*Defs.' Statement of Uncontested Material Facts* ¶ 6 (Docket # 11) (emphasis Defendants' statement); *Pl.'s Resp. to Defs.' Statement of Uncontested Material Facts* (Docket # 16).

---

[2] The magistrate judge deduced this fact from the Plaintiff's pleadings regarding a related matter. *Rec. Dec.* at 15.

[3] By Order dated March 26, 2008, the Court sealed the Plaintiff's Answers to Defendant's Interrogatories, because they contained personal identifiers and other private information that should not be made public. However, the quoted statements do not fit within the category of information that prompted the sealing and the Court hereby amends its March 26, 2008 Order and unseals the Plaintiff's Answers to Defendant's Interrogatories to the extent quoted above.

The Defendants object to the Court's reliance on this statement by the corrections officer, asserting that it "was not properly before the court because Plaintiff included this additional material fact in the fact section of her opposition memorandum, but did not file a statement of additional material facts in accordance with Local Rule 56(c). By including these additional material facts in the memorandum instead of a separate statement of additional material facts, the Defendants were precluded from responding as envisioned in Local Rule 56(d) and (e)." *Defs.' Obj.* at 2 n.1. The Defendants have a point. The citations for the officer's statements in the Plaintiff's memorandum are to the Plaintiff's unverified Complaint, not to the statements of material fact. The Plaintiff has thus failed to comply with the requirements of the local rule and by doing so, has foreclosed the Defendants' right to respond as envisioned by the rule. The Plaintiff, who is represented by counsel, could have easily avoided this controversy simply by complying with the local rule and referring to her interrogatory answers in her statement of material fact. The Court does not condone the Plaintiff's failure to do so and in another case, the result might be different.

Here, Magistrate Judge Kravchuk relied on some facts not found in the Local Rule 56-compliant pleadings but were "brought to [her] attention in the course of [her] review of the materials cited in connection with the pending motions." *Rec. Dec.* at 5. However, the Complaint itself reveals the Plaintiff's contentions about these statements and the Defendants do not claim unfair surprise. Further, the Defendants themselves filed the interrogatory answers by Ms. Brazier that include the officer's statements. *Pl.'s Answers to Def.'s Interrogs.* (Docket # 28). Finally, although the Defendants have objected on procedural grounds, they have not asserted that there is a legitimate evidentiary or substantive basis for disregarding the alleged statements. In this combination of circumstances, Magistrate Judge Kravchuk's reliance on these facts is appropriate. *See Ricci v. Applebee's Northeast, Inc.*, 297 F. Supp. 2d 311, 320-21 (D. Me. 2003).

Magistrate Judge Kravchuk relied heavily on the First Circuit's decision in *Miller v. Kennebec County*, 219 F.3d 8 (1st Cir. 2000). In *Miller*, the plaintiff was arrested after being stopped for driving with an expired inspection sticker and the routine warrant check disclosed a two-year-old outstanding warrant in Kennebec County. *Id.* at 10. The evidence in *Miller* included testimony by a corrections officer, without contradiction, that "contrary to the County's written policy which conformed to constitutional standards, all arrestees unable to make bail are strip searched." *Id.* at 12. Based upon this evidence, together with the fact that the jail held no more than fifty-nine arrestees, the First Circuit held that "[a]lthough there is no direct evidence that Sheriff Davey, as the responsible Knox County official, had actual knowledge of the jail's practice of strip searching all arrestees unable to make bail, his knowledge may be inferred," and allowed the § 1983 claim to go forward. *Id.*

Magistrate Judge Kravchuk cited two distinctions between *Miller* and the instant case, notably that in *Miller* it is "unclear from the First Circuit opinion and from the District Court's opinion whether the same officer conducted each of the strip searches," and that an officer who did not perform the strip searches testified at trial about the jail's customary practices. *Rec. Dec.* at 16. In Ms. Brazier's case, the same officer both made the statement about jail policy and conducted all three strip searches. Magistrate Judge Kravchuk recognized that "[t]his kind of fact pattern could reflect a solitary mixed-up corrections officer or a well-settled and widespread custom at the jail." *Id.* at 17. The magistrate judge ultimately concluded that the evidence was minimally sufficient to meet the customary practice standard.

Defendants cite several cases from outside the First Circuit to support their arguments that Ms. Brazier's allegations do not meet the requirement for an unconstitutional policy, custom, or practice, and provide authority for distinguishing *Miller*. *Defs.' Obj.* at 3-5. However, based

4

upon clear First Circuit precedent, the Plaintiff has presented enough evidence to meet the summary judgment standard. This Court is bound by *stare decisis*, and unless alternative binding authority is presented, the Court owes allegiance to existing precedent. *Eulitt v. Maine*, 386 F.3d 344, 349 (1st Cir. 2004) ("Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority.").

  **B.**  **Plaintiff's Motion to Substitute**

  The Court's Scheduling Order set November 7, 2007 as the deadline for amendment of the pleadings and joinder of parties, and January 23, 2008 for the completion of discovery. *Scheduling Order* (Docket # 7). On March 5, 2008, Ms. Brazier filed, together with her opposition to the Defendants' Summary Judgment motions, a motion to substitute Arlene Kerr for the Jane Doe defendant as the officer who conducted her strip searches. *Pl.'s Mot. for Substitution of a Party* (Docket # 18). She submitted an affidavit stating that she "only recalled the name of the Correction Officer while having [her] deposition taken . . . on December 5th and 6th, 2007." *Aff. of Ruthann Brazier* ¶ 6 (Docket # 19). However, several months earlier, on October 17, 2007, Ms. Brazier averred that the officer who conducted the strip searches was Arlene Kerr. *Pl.'s Answers to Def.'s Interrogs.* ¶¶ 3(f), 6(c).

  Ms. Brazier's motion is, as the magistrate judge stated, "vexing." *Rec. Dec.* at 2. Significantly, the magistrate judge characterized the affidavit as "containing a known falsehood." *Id.* Not only is the affidavit erroneous on its face, but the Plaintiff failed to explain why she waited from December until March to move to substitute.

  Magistrate Judge Kravchuk recommended that the Court deny Ms. Brazier's "motion to substitute Arlene Kerr as a party defendant, and enter judgment for Jane Doe on the current

5

complaint." *Rec. Dec.* at 3. She also suggested another option. "[I]f counsel for the existing defendants is willing to accept service on Kerr's behalf and forego any discovery in this case," the magistrate judge recommended "allowing the substitution and naming Kerr as a party and entering judgment for her."[4] *Id.* Magistrate Judge Kravchuk reasoned that under Rule 16(f), "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: . . . (C) fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). Among several available sanctions, Rule 37(b) allows the Court to "prohibit[] the disobedient party from supporting or opposing designated claims or defenses," and "dismiss[] the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(ii), (v). Applying these provisions here, Magistrate Judge Kravchuk would prohibit Ms. Brazier "from presenting any evidence in support of her claim against Kerr individually . . . and enter judgment on Kerr's behalf as a named defendant." *Rec. Dec.* at 3-4.

The parties seem to favor the magistrate judge's second suggestion. Ms. Brazier did not object to it and in an amended response to the motion to substitute, filed after the Recommended Decision was issued, Ms. Kerr agreed "to accept service and waive discovery on the condition that judgment be entered in her favor as outlined by the Magistrate in the Recommended Decision." *Def.'s Am. Resp. to Pl.'s Mot. to Substitute* at 1 (Docket # 32).

Entering judgment as a sanction against a party should not be taken lightly. *United States v. Klimavicius*, 847 F.2d 28, 35 (1st Cir. 1988) (discussing Rule 37 in the context of denaturalization proceedings). However, "[w]hen confronted with a party's defiance of its

---

[4] The Court's alternatives are few. As the magistrate judge points out, if the Court merely denied Ms. Brazier's motion, then Ms. Brazier could file another civil action against Ms. Kerr. *Rec. Dec.* at 3. If the Court allowed Ms. Brazier's motion, a new defendant would be introduced to the case long after the deadlines for substitution of parties and discovery had expired, requiring a new Scheduling Order to accommodate the discovery requirements of the newly impleaded defendant. *Id.* Further, this result would fail to effectively sanction Ms. Brazier's conduct.

management authority, a district court is necessarily vested with considerable discretion in deciding whether to impose sanctions on that party, and, if so, in determining what form the sanctions should take." *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 5 (1st Cir. 1993); *see also Kuehl v. F.D.I.C.*, 8 F.3d 905, 908-09 (1st Cir. 1993) (affirming dismissal of complaint for failing to follow the short and plain statement requirement under Federal Rule of Civil Procedure 8(a)); *Barreto v. Citibank, N.A.*, 907 F.2d 15, 16 (1st Cir. 1990) (allowing dismissal of a complaint where plaintiffs failed to answer interrogatories and failed to appear for an initial scheduling conference).

Here, Ms. Brazier did not merely fail to comply with deadlines in the Court's Scheduling Order; she filed a misleading affidavit in an effort to avoid the consequences of her failure. In these circumstances, to allow the case to go forward without further delay and to avoid any benefit to Ms. Brazier due to her late and erroneous filings, the Court grants Ms. Brazier's motion to substitute, but, by the authority granted by Rule 37(b), the Court will enter judgment in favor of Ms. Kerr, once defense counsel has confirmed acceptance of service on behalf of Ms. Kerr. Fed. R. Civ. P. 37(b)(2)(A)(ii).

## II.     CONCLUSION

It is therefore ORDERED that the Recommended Decision of the magistrate judge (Docket # 31) is hereby AFFIRMED. Accordingly, it is hereby ORDERED that the Defendants' Motion for Summary Judgment (Docket # 9) is GRANTED, IN PART, to the extent of Counts II (claim of supervisory liability asserted against Sheriff Herrick in relation to the strip searches), III (punitive damages against Herrick for the same), and IV (claim of municipal liability asserted against Oxford County premised on the denial of bail theory). The Defendants' Motion for Judgment on the Pleadings (Docket # 10) is DENIED.

It is further ORDERED that the Plaintiff's Motion to Substitute Arlene Kerr as a party defendant (Docket # 18) is GRANTED.  Upon defense counsel's confirmation that service of process has been accepted on behalf of Arlene Kerr, the Court will enter judgment in her favor on Counts V (claim of liability asserted against Jane Doe in relation to strip searches) and VI (punitive damages against Doe for the same).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 9th day of September, 2008